Argued and submitted December 13, 2001, reversed and remanded
January 30, 2002

Misty Dawn AMIOTTE,
*Appellant,*

*v.*

Gregory A. WOODS,
*Respondent.*

99C-32352; A112798

39 P3d 268

David L. Carlson argued the cause for appellant. With him on the brief was Pierson, LaMont & Carlson.

Tammy Schilling argued the cause for respondent. On the brief were Monty K. VanderMay and The VanderMay Law Firm.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Judy C. Lucas, Assistant Attorney General, filed the brief *amicus curiae* for the State of Oregon.

Before Landau, Presiding Judge, and Kistler and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Mother appeals a judgment that, among other things, provides that father is not required to pay child support for the parties' minor child because father is receiving cash payments under the "General Assistance" program within the meaning of ORS 25.245(1) (1999). She contends that the trial court erred in concluding that the public assistance payments that father receives qualify as "General Assistance" payments within the meaning of the statute. We agree and reverse and remand.

The relevant facts are uncontested. Mother gave birth to a child. She was not married at the time. She initiated separate actions to determine paternity and custody, both of which were consolidated. Father admitted paternity and conceded that custody should be awarded to mother. He disputed the amount of child support he should be required to pay, however. He contended that he should be required to pay none, because he is a full-time student, unemployed, and impoverished. He receives several forms of public assistance, specifically, $417 in food stamps, $360 in Pell and Oregon Need grants, and $495 in Salem Housing Authority aid in the form of rent reduction. He does not receive any payments from the Oregon Department of Human Services (DHS). The trial court concluded that "[t]he presumed amount of child support is inappropriate in this case due to Father receiving cash assistance as defined in ORS 25.245."

ORS 25.245(1) (1999) provides:

"Notwithstanding any other provision of Oregon law, a parent who is eligible for and receiving cash payments made by the Department of Human Services under Title IV-A of the Social Security Act or under the General Assistance or Oregon Supplemental Security Income Programs or cash payments made by the Social Security Administration under the Supplemental Security Income Program shall be rebuttably presumed unable to pay child support and a child support obligation does not accrue unless the presumption is rebutted."

By the terms of the statute, only specific forms of public assistance trigger the rebuttable presumption that the recipient is

unable to pay child support. First, the public assistance must be in the form of "cash payments." Other forms of public assistance do not qualify. Second, the cash payments must be made by either DHS or the Social Security Administration. Payments administered by other federal, state, or local government agencies do not qualify. Third, the cash payments made by DHS or the Social Security Administration must be made under one of four programs: (1) Title IV-A of the Social Security Act; (2) the General Assistance Program; (3) the Oregon Supplemental Security Income Program; or (4) the Supplemental Security Income Program.

All of the three forms of assistance that father receives plainly fail to meet the statutory criteria. The Pell and Oregon Need grants, although cash payments, are not administered by either DHS or the Social Security Administration. They are instead administered by the Oregon Student Assistance Commission from revenues generated by the Oregon Student Assistance Fund established by the State Treasury. ORS 348.505; ORS 348.570.

Likewise, the housing assistance is neither administered by the appropriate state or federal agency nor made in the form of cash payments. It is administered by the federal government, or a local public housing authority in cooperation with the federal government, by means of contracts between the authority and the landlord for subsidized rental payments. 42 USC § 1437(f) *et seq*.

Food stamps are administered by DHS under the federal Food Stamp Act of 1964, 7 USC § 2011 *et seq*., in the form of coupons. Whether those coupons amount to "cash payments" is an interesting question. Certainly they are not cash in the sense that they are negotiable tender. By law, they may be used to purchase "food in retail food stores which have been approved for participation in the food stamp program" and nothing else. 7 USC § 2016(b). They are, however, used in lieu of cash to purchase food. In fact, federal law expressly permits eligible recipients to receive cash in change for their coupons. *Id.* Even assuming that food stamp coupons are "cash payments," however, they are not administered under any of the four programs listed in ORS 25.245(1) (1999).

Father insists that they amount to "general assistance" payments. According to father, the statutes relating to public assistance define "general assistance" as

"assistance or service *of any character* provided to needy persons not otherwise provided for to the extent of such need and the availability of funds, including medical, surgical and hospital or other remedial care and costs of burials of needy persons."

ORS 411.010(2) (emphasis added). Food stamps, he argues, are "assistance or service of any character provided to needy persons."

Father's argument is unavailing. ORS 25.245(1) (1999) does not refer to "general assistance" generically; rather, it refers to a specific program administered by DHS, namely, "the General Assistance * * * Program[.]" At the time ORS 25.245(1) (1999) was enacted, the Adult and Family Services Division of DHS in fact administered a "General Assistance Program," frequently referred to in the applicable administrative rules as "GA." The program had specific eligibility requirements. Among other things, the program rules required eligible persons to be unemployable as a result of a physical, mental, or visual condition that met certain "GA unemployability criteria." OAR 461-125-510(1)(a) (1991). Those unemployability criteria defined by objective measurements the extent to which a physical, mental, or visual condition prevented an eligible person from performing certain job functions. OAR 461-125-550 (1991) (physical criteria); OAR 461-125-570 (1991) (vision criteria); OAR 461-125-590 (1991) (mental criteria). The GA program continues to exist and employs the same eligibility criteria. *See generally* OAR 461-125-0510 *et seq.* Nothing in the record suggests that father is eligible for, much less receiving, cash payments from the General Assistance Program that is administered by DHS.

Father argues that, even if the trial court erred in concluding that ORS 25.245(1) (1999) applied, it could have arrived at the same conclusion—that he is not required to pay child support—by applying the child support guidelines and appropriate rebuttal criteria. Whether the trial court *could have* exercised its discretion in that manner, however,

is beside the point. The fact is that the trial court did not do so. On remand, the trial court may entertain father's arguments and, if it finds that the presumed amount is unjust or inappropriate, make the appropriate findings on the record. *McGinley and McGinley*, 172 Or App 717, 735, 19 P3d 954, *rev den* 332 Or 305 (2001).

Reversed and remanded.